IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RANDY MUCHA, )
)
Plaintiff, )
)
v. ) No. 07 C 5350
)
VILLAGE OF OAK BROOK, a )
municipality, CHIEF THOMAS )
SHEAHAN, in his official and )
individual capacity, and )
BOARD OF FIRE AND POLICE )
COMMISSIONERS OF THE VILLAGE )
OF OAK BROOK, )
)
Defendants. )

## **OPINION AND ORDER**

Plaintiff Randy Mucha was formerly employed as a police

officer for defendant Village of Oak Brook (the "Village"). Also

named as defendants are the Board of Fire and Police

Commissioners of the Village of Oak Brook ("BFPC") and Oak Brook

Police Chief Thomas Sheahan, in his individual and official

capacities.[1] Plaintiff alleges that he was improperly

---

[1]Suing Sheahan in his official capacity is redundant when
also suing the Village. The official capacity claims against
Sheahan will be dismissed without prejudice. See <u>Doe v. Smith</u>,
470 F.3d 331, 337 n. 12 (7th Cir. 2006); <u>Alcazar-Anselmo v. City
of Chicago</u>, 2008 WL 1805380 *2 (N.D. Ill. April 18, 2008). Since
some counts name only Sheahan and some counts name both Sheahan
and the Village, it is assumed that the counts naming only
Sheahan are brought against Sheahan in his individual capacity
only.

discharged. He also alleges that, prior to his discharge, Sheahan had him arrested on false charges. Additionally, plaintiff contends that he has been defamed and that Sheahan improperly invaded his privacy while investigating him.

In his First Amended Complaint, plaintiff states his claims as follows. Count I is pursuant to the Illinois Administrative Review Act, 735 ILCS 5/3-101 et seq., for judicial review of the BFPC's decision to terminate plaintiff's employment. Count II is a federal due process claim against the BFPC and Sheahan based on the decision to discharge plaintiff. Plaintiff contends the decision of the BFPC was arbitrary, irrational, capricious, and stigmatizing. Count III is a state law malicious prosecution claim against Sheahan and the Village based on misdemeanor charges initiated by Sheahan alleging that plaintiff improperly requested a criminal background check of a citizen in violation of the Illinois Uniform Conviction Information Act ("UCIA"), 20 ILCS 2635/18. Count IV is a federal arrest without probable cause claim against Sheahan based on Sheahan arresting plaintiff on the UCIA charge. Count V is a state law defamation per se claim against Sheahan based on statements Sheahan made regarding plaintiff violating the UCIA. Count VI is a defamation per se claim against Sheahan and the Village based on statements that plaintiff had child pornography on his personal computer. Count VII is a state law invasion of

privacy claim against Sheahan. Plaintiff alleges that Sheahan obtained "unauthorized control" over plaintiff's home computer. Sheahan used that opportunity to examine and print copies of nude photographs of plaintiff's wife that were on the computer's hard drive. Sheahan provided copies of the photographs to private investigators participating in the internal disciplinary investigation of plaintiff.

The BFPC moves to dismiss the Count II federal due process claim on the ground that it fails to state a claim upon which relief may be granted. Assuming Count II is dismissed, the BFPC contends that the Count I supplemental state law claim for administrative review should be dismissed for lack of jurisdiction because it is not sufficiently related to the only other federal claim, the Count IV false arrest claim against Sheahan. Sheahan also moves to dismiss Count II. Sheahan and the Village (as to Count VI) move to dismiss Counts V, VI, and VII defamation and invasion of privacy claims, primarily based on state law statutory immunities. Sheahan and the Village do not move to dismiss Counts III and IV, the state law malicious prosecution and federal false arrest claims.[2]

---

[2]The Village initially moved to dismiss the Count III claim against it, but concedes in its reply that plaintiff may proceed on that claim against it based on respondeat superior.

- 3 -

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Estate of Sims v. County of Bureau, 506 F.3d 509, 514 (7th Cir. 2007). Plaintiff need only plead facts sufficient to raise a right to relief above the speculative level, providing fair notice and an appearance of plausibility. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1973-74 & n.14 (2007); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Sims, 506 F.3d at 514; St. John's United Church of Chicago, 502 F.3d 616, 625 (7th Cir. 2007), cert. denied, 128 S. Ct. ___ (May 12, 2008); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007). A complaint should be dismissed if "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." St. John's, 502 F.3d at 625 (quoting Airborne, 499 F.3d at 667). When a case is more complex than the average case and discovery is likely to be more costly than the average case, more factual detail may be necessary to establish the plausibility of the claims requiring the additional burden. See Limestone Dev. Corp. v. Village of Lemont, Ill., 520 F.3d 797, 803 (7th Cir. 2008). Still, absent the applicability of Fed. R. Civ. P. 9(b), heightened fact pleading of specifics is not required. Id. (quoting Twombly, 127 S. Ct. at 1964, 1974).

Illinois rules imposing a heightened pleading standard for defamation claims do not apply in federal court. Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 926 (7th Cir. 2003); Fishering v. City of Chicago, 2008 WL 834436 *2-3 (N.D. Ill. March 27, 2008); Duvall v. Tyco Adhesives GP Holdings, Inc., 2007 WL 2075863 *2 (N.D. Ill. July 12, 2007).

The well-pleaded allegations of the complaint must be taken as true and all reasonable inferences drawn in plaintiff's favor. Twombly, 127 S. Ct. at 1965; Erickson, 127 S. Ct. at 2200; Sims, 506 F.3d at 512; Caldwell v. Jones, 513 F. Supp. 2d 1000, 1003 (N.D. Ind. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969; Caldwell, 513 F. Supp. 2d at 1003. As long as consistent with the allegations of the complaint, plaintiff may assert additional facts in his response to the motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Bass v. Dart, 2007 WL 3374584 *1 (N.D. Ill. Nov. 8, 2007); Gershengorin v. Vienna Beef, Ltd., 2007 WL 2840476 *3 (N.D. Ill. Sept. 28, 2007). The precise words of an allegedly defamatory statement need not be included in the complaint and may be amplified in response to a motion to dismiss. Fishering, 2008 WL 834436 at *2-3.

Additionally, under federal pleading rules, plaintiff is not limited to nor bound by the legal characterizations of his claims contained in the complaint. A claim can survive as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999); LaRoe v. Cassens & Sons, Inc., 472 F. Supp. 2d 1041, 1047 (S.D. Ill. 2006). The legal basis for a claim, though, must be identified in response to a motion to dismiss and sufficient argument made in support of an adequate claim being stated. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Taking the allegations of the Amended Complaint as true and drawing all reasonable inferences therefrom, the facts assumed to be true for purposes of ruling on defendants' motions to dismiss are as follows. In 1987, plaintiff was hired as an Oak Brook police officer. In late 2004 and early 2005, the acting Chief of Police was Lieutenant Steve Larson. Larson assigned plaintiff the duty of conducting internal investigations of citizen complaints. In late 2004, there were complaints that police officers were not patrolling and were just sitting in their parked cars. During the investigation of these complaints, plaintiff was told that Oak Brook resident Fran Gaik was speaking

to officers about problems in the Department. He was also told
that Gaik might have an internal list of officers' home addresses
and telephone numbers. As part of his investigation, plaintiff
requested a criminal background check of Gaik. In February and
early March 2005, plaintiff received complaints that a police car
had been parked in Gaik's driveway. It was determined that it
was Officer Marty Zelisko's squad car. It was also determined
that Zelisko made false statements as to the location of his
squad car. Acting Chief Larson placed Zelisko on administrative
leave.

On March 21, 2005, defendant Sheahan was hired as the
Chief of Police. Sheahan learned that plaintiff had been
investigating citizen complaints and that he had requested a
criminal background check of Gaik as part of that investigation.
After conversations with Gaik, Sheahan reinstated Zelisko. In
April 2005, Gaik and her husband filed a federal lawsuit naming
the Village, Mucha, and the Village Prosecutor as defendants.
See Gaik v. Mullins, No. 05 C 2335 (N.D. Ill.).

In late 2005, plaintiff was the top candidate on the
Department's Lieutenant list. On December 13, 2005, Sheahan
announced he intended to eliminate the Lieutenant position. On
December 19, plaintiff wrote to the BFPC regarding his desire to
be promoted to Lieutenant. The letter included criticisms of
Sheahan's administration. Thereafter, various internal

- 7 -

investigations of, attempts to discipline, and discipline of Mucha occurred which need not be detailed here. The only allegations against Mucha that need be mentioned are the two charges brought before the BFPC.

On June 7, 2006, Sheahan placed Mucha on paid administrative leave and filed disciplinary charges with the BFPC seeking Mucha's discharge (the "2006 Charge"). The 2006 Charge primarily pertained to the aforementioned letter to the BFPC which Sheahan contended violated the chain of command.

While this disciplinary proceeding was pending, Sheahan sought to bring criminal charges against Mucha based on the criminal background check he had done of Gaik. First he met with DuPage County prosecutors who informed him there was insufficient evidence to bring charges. In August 2006, Sheahan caused to be filed a complaint and arrest warrant charging Mucha with a Class A misdemeanor based on the Gaik background check. Initially a trial was set for April 2007, but was continued to July because Sheahan failed to appear. In a letter dated June 29, 2007, the DuPage County State's Attorney's Office informed Mucha that it would not prosecute the criminal charge. In a letter to Sheahan, the State's Attorney's Office admonished Sheahan for failing to disclose exculpatory evidence. The criminal charge was formally dismissed on July 12, 2007.

In September 2006, on Sheahan's motion to the BFPC, the 2006 Charge was amended to add the alleged criminal violation. Acting on Sheahan's request, on September 28, 2006, the BFPC suspended Mucha without pay pending a hearing on the amended charge. In April 2007, the BFPC held a hearing on the 2006 Charge. Shortly thereafter,[3] the BFPC found that Mucha had not committed the alleged criminal violation. It did find other violations and ordered a 30-day suspension.

After Mucha served the 30-day suspension, Sheahan would not allow Mucha to return to work. Instead, Mucha remained suspended without pay. On June 21, 2007, Sheahan then brought a new charge before the BFPC (the "2007 Charge"). It was alleged that Mucha had lied during his May 2006 deposition in Gaik's federal lawsuit and that Mucha had lied during the hearing on the 2006 Charge. A hearing on the 2007 Charge was held in July 2007. In an order dated August 16, 2007, the BFPC found that Mucha had committed perjury when he testified in his deposition that he did not know who Linda Lucinda was. A few months after the deposition, Mucha submitted amendments to his deposition averring that Linda Lucinda was an email moniker that he had used. The BFPC found it to be noncredible that Mucha had forgotten an email

---

[3]The ruling apparently was issued sometime between the hearing date and the June 29, 2007 letter from the State's Attorney's Office.

moniker that he had personally used. It also found that he had committed perjury during the 2006 Charge hearing by testifying that, at the time of his deposition, he had forgotten that he had used that moniker. Based on these findings, Mucha's employment was terminated effective July 23, 2007.

Plaintiff alleges that the Village President made public statements to put political pressure on the BFPC to reach a decision to discharge plaintiff based on the 2007 Charge instead of suspending him as it had done with the 2006 Charge. It is also alleged that the Village President appointed a new member to the BFPC for the stated reason of discharging Mucha. However, it is also alleged that the new member recused himself from consideration of the 2007 Charge. Plaintiff contends that the 2007 Charge contained no new allegations, resulting in his facing the same charges twice. It is conclusorily alleged that the BFPC's decision on the 2007 Charge was arbitrary, irrational, and capricious, and that the allegations of perjury stigmatized him to the extent that it prevented him from finding further employment. It is also conclusorily alleged that plaintiff had a property interest in his employment.

Count II will be considered first. To the extent plaintiff is contending that he was deprived of a liberty interest by being stigmatized in his profession, that claim is not cognizable. As plaintiff alleges in the Amended Complaint,

he received a hearing before the BFPC that is reviewable in court
under the Illinois Administrative Review Act. That provides
plaintiff with adequate name-clearing procedures, which is all
the procedural due process that is required by the Constitution
for the deprivation of such a liberty interest. See Draghi v.
County of Cook, 184 F.3d 689, 693-94 (7th Cir. 1999); Doyle v.
Camelot Care Centers, Inc., 305 F.3d 603, 618-19 (7th Cir. 2002);
Stachowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir.
2005); Ewing v. City of Monmouth, Ill., 2006 WL 2578921 *4
(C.D. Ill. Sept. 6, 2006); Mihailovic v. Soldato, 2004 WL 528010
*2 (N.D. Ill. March 17, 2004). In his answers to the motions to
dismiss, plaintiff contends he is not raising a procedural due
process claim, only a substantive due process claim, but cites
Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch.
Dist. No. 1, 143 F.3d 351 (7th Cir. 1998), as setting forth all
the necessary elements of a liberty interest claim. See id.
at 356 (quoting Johnson v. Martin, 943 F.2d 15, 16 (7th Cir.
1991)) ("To prevail on this liberty cause of action, a discharged
state employee must show that '(1) he was stigmatized by the
defendant's conduct, (2) the stigmatizing information was
publicly disclosed, and (3) he suffered a tangible loss of other
employment opportunities as a result of public disclosure.'").
In order to prevail on such a liberty interest claim, though, it
must be shown both that a liberty interest existed (the elements

- 11 -

quoted from Strasburger) and that the liberty interest was denied
without providing adequate process. See Connecticut Dept. of
Pub. Safety v. Doe, 538 U.S. 1, 7-8 (2003); McMahon v.
Kindlarski, 512 F.3d 983, 987-88 (7th Cir. 2008); RJB Prop.,
Inc. v. Board of Educ. of City of Chicago, 468 F.3d 1005, 1011
(7th Cir. 2006); Brown v. City of Mich. City, Ind., 462 F.3d 720,
728 (7th Cir. 2006); Omosegbon v. Wells, 335 F.3d 668, 674 (7th
Cir. 2003); Doyle, 305 F.3d at 617-18; Draghi, 184 F.3d at 693;
Beary Landscaping, Inc. v. Ludwig, 479 F. Supp. 2d 857, 879 (N.D.
Ill. 2007); Mihailovic, 2004 WL 528010 at *2-3. Since the
allegations of the Amended Complaint only support that plaintiff
received adequate process (a hearing before the BFPC and an
opportunity for court review), plaintiff does not state a viable
liberty interest procedural due process claim.

Plaintiff also contends that he adequately alleges a
substantive due process claim based on the deprivation of his
property interest in his employment. In the present context, in
addition to a deprivation of a protected interest, the elements
of such a claim are that (1) the challenged decision of the state
actor was arbitrary and irrational, and (2) the state actor
either committed another substantive constitutional violation or
state remedies are inadequate. Veterans Legal Def. Fund v.
Schwartz, 330 F.3d 937, 941 (7th Cir. 2003); Draghi, 184 F.3d
at 694; Strasburger, 143 F.3d at 357. Defendants contend

plaintiff has not adequately pleaded either of the additional
elements. They raise no issue regarding plaintiff having a
property interest in his employment.

Plaintiff contends that he has alleged another
substantive constitutional violation because he also alleges a
deprivation of his occupational liberty interest in that he was
falsely found to have committed perjury and such information was
made available to the public. Even assuming plaintiff had an
occupational liberty interest that was deprived, that is not a
fundamental liberty interest. See Brown, 462 F.3d at 732
(quoting Washington v. Gluckberg, 521 U.S. 702, 720 (1997)). An
occupational liberty interest is not itself a substantive
constitutional right, but a type of interest--as is property--
that cannot be deprived absent appropriate constitutional due
process. Draghi, 184 F.3d at 693. Interests that can be
deprived if adequate process is provided do not implicate the
substantive constitutional rights that can turn a deprivation of
property into a substantive due process claim. Wudtke v. Davel,
128 F.3d 1057, 1062-63 (7th Cir. 1997).

Alternatively, plaintiff contends that he satisfies this
element because the procedures provided to him were not adequate.
The claimed procedural inadequacy is that Sheahan continued to
suspend him without pay after he served his 30-day suspension and
while the 2007 Charge was pending against him. There are a

- 13 -

number of problems with this contention. First, it only applies
to the Count II claim against Sheahan, not the Count II claim
against the BFPC. It is Sheahan, not the BFPC, that is alleged
to have continued to suspend plaintiff without pay. Therefore,
this cannot be a basis for a claim against the BFPC. Second,
plaintiff does not support this contention with any legal
argument. It is a fact-intensive question as to what, if any,
procedures may be required before or after suspending a
particular employee without pay pending disciplinary proceedings.
See generally Gilbert v. Homar, 520 U.S. 924, 930-35 (1997).
Plaintiff does not attempt to address the legal issue of whether
a suspension without pay or a predeprivation hearing was
permissible under the circumstances alleged in his Amended
Complaint.

But even assuming Sheahan violated procedural due process
by depriving plaintiff of pay pending a determination by the BFPC
after a hearing, that is not sufficient to support plaintiff's
substantive due process claim. Plaintiff refers to this
violation as "another constitutional violation." The first prong
of the last element, however, requires another substantive
constitutional violation. A violation of procedural due process
is not a substantive constitutional violation. Therefore, this
violation could only support a substantive due process claim if
it means plaintiff's state court remedies were inadequate.

- 14 -

Although plaintiff contends he cannot recover backpay under state law, that is not true. A court may order reinstatement and Illinois law provides that an employee is entitled to backpay if charges are not sustained. See 65 ILCS 5/10-2.1-17; People ex rel. Jaworski v. Jenkins, 56 Ill. App. 3d 1028, 372 N.E.2d 881, 884 (1st Dist. 1978); DeMauro v. Loren-Maltese, 2001 WL 936113 *6 (N.D. Ill. Aug. 17, 2001). Even if Sheahan was in error for suspending plaintiff without pay prior to a ruling on the 2007 charge, that is not a procedural issue that goes to determining the merits of plaintiff's discharge. It is not the type of procedural deficiency that could turn a deprivation of a property interest into a substantive due process violation.

For the foregoing reasons, plaintiff's allegations do not support a federal due process violation against Sheahan or the BFPC. It is, therefore, unnecessary to consider other arguments defendants raise regarding Count II. Count II of the Amended Complaint will be dismissed.

With Count II dismissed, the only remaining federal claim is the Count IV arrest without probable cause claim against Sheahan in his individual capacity. Before addressing the merits of any of the state law claims, it should first be determined which claims for which it is appropriate to exercise supplemental jurisdiction. Supplemental jurisdiction is limited to the state law claims that are "so related to" Count IV "that they form part

of the same case or controversy." 28 U.S.C. § 1367(a). To satisfy this standard, the claims must "derive from a common nucleus of operative fact." Wisconsin v. Ho-Chunk Nation, 512 F.3d 921, 936 (7th Cir. 2008). Count IV is based on being arrested on charges of improperly ordering a criminal background check of Gaik. That is a relatively narrow claim.

Count I is an administrative review of the BFPC's decision on the 2007 Charge. Mucha's dismissal on that Charge is based on false statements regarding his use of a particular email address. Conducting the criminal background check of Gaik was not a ground for discipline raised in the 2007 Charge. Count I does not derive from the same common nucleus of operative facts as Count IV. Plaintiff contends the court should exercise its discretion to retain jurisdiction over this count because a refiling of this claim in state court would be untimely. See Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251 (7th Cir. 1994); 735 ILCS 5/3-103 (35 days to file action for administrative review). An Illinois statute, however, provides that a claim dismissed from a federal district court for lack of jurisdiction may be filed in state court within the time specified therein. See 735 ILCS 5/13-217; Behling v. Department of Labor, 171 Ill. App. 3d 804, 525 N.E.2d 1021, 1024 (1st Dist. 1988) (provisions of § 13-217 apply to administrative review).

Count I will be dismissed without prejudice for lack of subject matter jurisdiction.

The Count III malicious prosecution claim is based on the prosecution of the same charge that was the basis for the allegedly false arrest. This claim, including the _respondeat superior_ claim against the Village, derives from the same operative facts as Count IV. Jurisdiction will be retained over Count III. Count V is a defamation claim against Sheahan based on false statements that Mucha had committed the crime that underlies the false arrest charge. Jurisdiction will be retained over Count V.

Count VI alleges defamatory statements regarding plaintiff having child pornography on his computer. Those allegations are separate and distinct from the purported grounds for the false arrest. Jurisdiction over Count VI will not be retained. The Count VII invasion of privacy claim concerns other pictures on plaintiff's computer that are also unrelated to the false arrest claim. Counts VI and VII will be dismissed without prejudice for lack of subject matter jurisdiction.

Still to be considered is Sheahan's contention that Count V should be dismissed based on a state law immunity. Count V specifically references statements Sheahan made before the BFPC. See Am. Compl. ¶¶ 92-93. Sheahan contends there is absolute immunity from civil damages for statements made during

quasi-judicial proceedings. Plaintiff responds that he will not dispute that the BFPC is a quasi-judicial body nor does he dispute defendant's immunity contention. Count V will be dismissed to the extent it is based on these statements.

In Count V, it is also alleged that: "At various times while the criminal charges against Mucha were pending, Defendant Sheahan personally communicated to his department and the press that Mucha committed a crime by requesting a criminal background history of Fran Gaik." Id. ¶ 91. The criminal charges were pending from August 17, 2006 until July 12, 2007. In response to the motion to dismiss, plaintiff concedes that the applicable statute of limitations limits this claim to statements made September 21, 2006 or later. Plaintiff represents that it is likely that additional statements made during this time period will be found during discovery. Presently he specifically identifies two written statements, which he amplifies upon in his answer to Sheahan's motion to dismiss. Contrary to defendant's contention, it is permissible to consider the additional allegations contained in response to the motion to dismiss. See Brokaw, 235 F.3d at 1006; Forseth, 199 F.3d at 368; Fishering, 2008 WL 834436 at *2-3; Duvall, 2007 WL 2075863 at *2.

Allegedly, on September 29, 2006 at a Police Department internal meeting, Sheahan distributed to all present a packet of materials containing a copy of the amended 2006 Charge (including

the alleged criminal violation) and information regarding
Sheahan's arrest of Mucha. Distribution of the materials on this
date is not specifically alleged in the Amended Complaint, but is
consistent with ¶ 91.

In the Amended Complaint, ¶¶ 51-52, plaintiff alleges
that he scheduled a June 8, 2007 fundraiser to raise funds for
his criminal defense. He invited Oak Brook police officers, but
they received a memorandum from Sheahan reminding them that they
should not associate with persons under criminal investigation.
It is alleged that this memorandum was intended to prevent
officers from attending plaintiff's fundraiser. The language
quoted from the memorandum does not specifically mention Mucha.
In response to the motion to dismiss, plaintiff specifies that
the memorandum was distributed June 8, 2007. He does not provide
a copy of the memorandum. He also does not state that the
memorandum specifically mentioned him, repeating that the
memorandum warned officers about associating with a person who
was under criminal investigation. Sheahan, though, does not
raise any argument that this statement does not include a
representation that Mucha had committed a crime.

In response to the motion to dismiss, plaintiff also
provides a copy of the August 17, 2006 press release regarding
his arrest. In ¶ 45 of the Amended Complaint, it is alleged that
Sheahan distributed this press release. While recognizing that

the release was issued outside the limitations period, plaintiff
presently contends that this press release continues to be
available on the Village's website. He mentions this as support
for his contention that he expects to discover more statements,
but does not allege that Sheahan is responsible for continuing to
post the release on the website.

Sheahan does not contend that the quasi-judicial
proceeding immunity applies to the remaining statements. As to
the remaining statements, he relies on a provision of the
Illinois Tort Immunity Act. "Except as otherwise provided by
Statute, a public employee serving in a position involving the
determination of policy or the exercise of discretion is not
liable for an injury resulting from his act or omission in
determining policy when acting in the exercise of such discretion
even though abused." 745 ILCS 10/2-201. Plaintiff contends this
immunity is inapplicable since the alleged statements do not
involve a determination of policy. He also contends that the
immunity does not apply to acts that were corruptly or
maliciously motivated.

The burden of establishing the applicability of the
immunity and all of its elements is on defendant. Apex Oil
Co. v. Metropolitan Water Reclamation Dist. of Greater Chicago,
2006 WL 566451 *6 (N.D. Ill. March 3, 2006). Affirmative
defenses may be resolved on a motion to dismiss if the plaintiff

has alleged facts conclusively supporting the applicability of the defense. See Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001).

To be immune under § 2-201, the public employee's conduct allegedly causing injury must be both an exercise of discretion and a policy determination. Harinek v. 161 N. Clark St. Ltd. P'ship, 181 Ill. 2d 335, 692 N.E.2d 1177, 1181 (1998); Hanania v. Loren-Maltese, 319 F. Supp. 2d 814, 835 (N.D. Ill. 2004) ("Hanania II"). To qualify as discretionary under this statute, acts must be both unique to the public office and involve an exercise of judgment. Harinek, 692 N.E.2d at 1182 (quoting Snyder v. Curran Twp., 167 Ill. 2d 466, 657 N.E.2d 988, 993 (1995)); Stratman v. Brent, 291 Ill. App. 3d 123, 683 N.E.2d 951, 956 (2d Dist. 1997) (same); Hanania II, 319 F. Supp. 2d at 835. Policy determinations are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." Harinek, 692 N.E.2d at 1181 (quoting West v. Kirkham, 147 Ill. 2d 1, 588 N.E.2d 1104, 1109 (1992)).

Defendant cites cases holding that § 2-201 immunity applies to a decision to hire or discharge a municipal employee. See Sanchez v. Town of Cicero, 2007 WL 844588 *4 (N.D. Ill. March 15, 2007); Valentino v. Village of S. Chicago Heights, 2006 WL 2794931 *6 (N.D. Ill. Sep 27, 2006); Hanania II, 319 F. Supp. 2d

at 835-36.[4]  See also Zinnermon v. City of Chicago Dept. of
Police, 209 F. Supp. 2d 908, 910-11 (N.D. Ill. 2002) (police
officer).  Those holdings, however, all pertain to claims
challenging the discharge itself.  Count V, though, is a
defamation claim, with the alleged statements being tangentially
related to the discipline of a police officer.  Under particular
circumstances, cases have declined to extend § 2-201 immunity to
defamation claims based on statements related to disciplining a
public employee or otherwise related to the employee's
performance.  See Hanania v. Loren-Maltese, 56 F. Supp. 2d 1010,
1017 (N.D. Ill. 1999) ("Hanania I"), aff'd on other grounds,
212 F.3d 353 (7th Cir. 2000) (defamation claims based on
statements in press releases and mailings to the public that were
related to discharges of two municipal employee did not involve
discretionary acts protected by § 2-201 immunity);[5] Horwitz v.

_____

[4]Defendant describes these three cases as concerning the
hiring or discharge of a police officer, but only Sanchez
involves a police officer.

[5]Hanania I is a ruling on a motion to dismiss while
Hanania II is a subsequent ruling on the defendants' motion for
summary judgment.  On the motion to dismiss, it was held that the
facts before the court did not support that the defamation claims
of the plaintiffs were subject to dismissal on immunity grounds.
See Hanania I, 56 F. Supp. 2d at 1017-19.  However, the
defamation claims of one of the plaintiffs were dismissed on
grounds other than immunity.  See id. at 1019; Hanania II, 319
F. Supp. 2d at 837.  On summary judgment, § 2-201 immunity was

- 22 -

Board of Educ. of Avoca Sch. Dist. No. 37, 1999 WL 558131 *7-8
(N.D. Ill. July 21, 1999) (decision of school board member,
superintendent, and principal that teacher should undergo a
medical examination was an immunized policy decision, but their
allegedly defamatory acts of informing students and parents that
the teacher was unfit to be a teacher were not policy decisions
protected by § 2-201 immunity); Stratman, 683 N.E.2d at 956-57
(§ 2-201 immunity did not apply to police chief's response to
inquiry from prospective employer of officer because the acts
were not conduct unique to a police chief). Compare also
Clarage v. Kuzma, 342 Ill. App. 3d 573, 795 N.E.2d 348, 359-60
(3d Dist. 2003) (member of township board would have been
entitled to § 2-201 immunity as to decision to approve or not
approve development of a property, but immunity did not apply to
republication of letter containing allegedly defamatory
statements about the landowner since it was not done pursuant to
an official policy). But compare also Gavery v. Lake County,
160 Ill. App. 3d 761, 513 N.E.2d 1127, 1128-29 (2d Dist. 1987)
(county personnel director's letter to county employees that
participants in a particular HMO would no longer be able to
select a particular health care provider which included allegedly
defamatory statements about the provider's poor quality of care

---

not raised regarding the remaining defamation claims. See
Hanania II, 319 F. Supp. 2d at 834-35; 837-38.

was a discretionary act protected by § 2-201 immunity). The particular circumstances of Sheahan's alleged disclosures must be considered to determine whether he is entitled to § 2-201 immunity.

Before turning to the specific disclosures, another issue raised by plaintiff will be considered. Plaintiff contends the § 2-201 immunity does not apply to acts based on corrupt or malicious motives. While the Seventh Circuit had previously reached such a conclusion, see Youker v. Schoenenberger, 22 F.3d 163, 168 (7th Cir. 1994), the Illinois Supreme Court subsequently held that there is no exception for corrupt, malicious, willful, or wanton conduct for statutory immunities unless the statute specifically includes such an exception. See Village of Bloomingdale v. CDG Enter., Inc., 196 Ill. 2d 484, 752 N.E.2d 1090, 1098 (2001). See also Kevin's Towing, Inc. v. Thomas, 351 Ill. App. 3d 540, 814 N.E.2d 1003, 1008 (2d Dist. 2004); Apex Oil, 2006 WL 566451 at *7; Hanania II, 319 F. Supp. 2d at 836; Harris v. City of West Chicago, Ill., 2002 WL 31001888 *9 (N.D. Ill. Sept. 3, 2002). When applying Illinois law, this court is to follow Seventh Circuit holdings unless subsequent state court rulings convince the court that the Seventh Circuit holding is no longer good law. Jones v. Fleetwood Motor Homes, 127 F. Supp. 2d 958, 966 (N.D. Ill. 2000). The Illinois Supreme Court decision will be followed. Since § 2-201 contains no exception for

corrupt or malicious motives, Sheahan's alleged motivation is irrelevant to whether the immunity applies.

The alleged September 29, 2006 statement was made to members of the Oak Brook Police Department. It included distributing copies of the 2006 Charge, which contained allegations of committing a criminal violation, and additional information describing plaintiff's arrest on the criminal charges. The disciplining of a police officer requires the balancing of interests that involve policy judgments unique to running a police department. See Zinnermon, 209 F. Supp. 2d at 911. See also Johnson v. Mers, 279 Ill. App. 3d 372, 664 N.E.2d 668, 675 (2d Dist. 1996) (hiring a police officer); Sanchez, 2007 WL 844588 at *4 (same). Policy matters regarding the disciplining of a police officer are not limited to the impact on the police officer being disciplined. The police chief (or other official responsible for such policies) must also consider the impact on other officers. Thus the police chief must balance the interests of maintaining departmental discipline, the privacy of the charged officer, and the effect on other officers in determining what information to reveal to other officers. Therefore, the appropriate information to report to other officers about one officer's disciplinary proceedings is a matter of exercising discretion that is unique to a police department. Without making any judgment as to whether Sheahan's

manner of reporting plaintiff's charges to the other officers was an appropriate or correct balancing of those interests, it was a discretionary policy decision that is protected by § 2-201 immunity. Cf. Gavery, 513 N.E.2d at 1128-29. The Count V defamation claim will be dismissed to the extent it is based on the September 29, 2006 statements to members of the Oak Brook Police Department.

The other statement that plaintiff specifically identifies is the memorandum to police officers regarding associating with persons under investigation. As alleged in the Amended Complaint and amplified in plaintiff's answer to Sheahan's motion to dismiss, it does not even appear that the memorandum specifically mentioned plaintiff or that he had committed a crime. The portion of the memorandum that is quoted simply states departmental policy regarding associating with those under criminal investigation. Even if it did mention Mucha, the memorandum is a statement of departmental policy that is protected by § 2-201 immunity. The Count V defamation claim will be dismissed to the extent it is based on the June 8, 2007 memorandum.

Plaintiff also cites Theriault v. Village of Schaumburg, 2002 WL 31803826 *3 (N.D. Ill. Dec. 12, 2002), for the proposition that a police officer procuring a witness to testify falsely at a probable cause hearing is not protected by § 2-201

immunity because it is not a discretionary act involving the determination of policy. Plaintiff points to the allegation that Sheahan personally appeared before a judge to request an arrest warrant for Mucha. See Am. Compl. ¶ 44. That appearance would have been prior to Mucha turning himself in on the arrest warrant on August 17, 2006. See id. ¶ 45. Therefore, this alleged statement occurred outside the limitation period. Thus, it is unnecessary to consider whether the statement to the judge would be protected by the § 2-201 immunity.

This leaves only plaintiff's general allegation that between September 21, 2006 and July 12, 2007, Sheahan communicated to the press that plaintiff had committed a crime. Defendant contends this allegation is too bare and conclusory to state a claim under the standard enunciated in Twombly, supra, and its progeny. Plaintiff, however, has identified the time period, the form of the statements (press communications), and that each included the false statement that Mucha had committed a crime by requesting Gaik's criminal background check. That provides Sheahan with sufficient notice of the alleged defamation. See Fishering, 2008 WL 834436 at *3.

Determining what information about an alleged crime to release to the public could involve discretionary policy determinations related to the protection of the public. But any information about a particular public agency's functions that the

public agency provides to the public arguably is an attempt to implement that agency's policies. Nevertheless, it has generally been held that press releases or other communications to the public do not fall within the protections of § 2-201. See Hanania I, 56 F. Supp. 2d at 1017; Horwitz, 1999 WL 558131 at *7-8; Clarage, 795 N.E.2d at 359-60. From the facts alleged in the Amended Complaint, it cannot be conclusively inferred that Sheahan's statements to the press were intended to protect the public or enhance the Department's law enforcement abilities. On the allegations before the court, it cannot be determined that Sheahan's communications to the press reporting that Mucha had committed a crime involved discretionary public policy decisions that would invoke the immunity protections of § 2-201.

Count V will be dismissed except to the extent it is based on Sheahan, on or after September 21, 2006, communicating to the press that Mucha had committed a crime.

With Count II and related state law claims out of this case, the potential discovery in this case is substantially narrowed. The parties shall meet to discuss settlement possibilities within two weeks. If settlement is not reached, a discovery plan shall be filed with the court on or before June 24, 2008.

IT IS THEREFORE ORDERED that defendant Board's motion to dismiss [32] is granted. Defendants Village's and Sheahan's

motion to dismiss [33] is granted in part and denied in part.
Claims against Sheahan in his official capacity are dismissed
without prejudice. Count II of the Amended Complaint is
dismissed with prejudice. Counts I, VI, and VII are dismissed
without prejudice for lack of subject matter jurisdiction.
Count V is dismissed except to the extent it is based on
communications defendant Sheahan made to the press, on or after
September 21, 2006, that plaintiff had committed a crime.
Defendant Board is dismissed from this action. Within two weeks,
defendants Village and Sheahan shall answer the remaining
allegations of the Amended Complaint. All discovery is to be
completed by September 30, 2008. A status hearing will be held
on June 25, 2008 at 11:00 a.m. The parties shall meet to discuss
settlement possibilities within two weeks. If settlement is not
reached, a discovery plan shall be filed with the court on or
before June 24, 2008.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: MAY   29, 2008